IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| CHRISTOPHER BERNARD JONES, ) | Civil Action No. 3:07-1876-PMD-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| S.C. DEPT. OF CORRECTIONS; ) | |
| JON OZMINT; ) | |
| S.C. DEPT. OF PROBATION, PAROLE, AND ) | |
| PARDON SERVICES; ) | |
| SAMUEL GLOVER; ) | |
| GREENVILLE TECHNICAL COLLEGE; ) | **REPORT AND RECOMMENDATION** |
| TIM RILEY, WARDEN TYGER RIVER ) | |
| CORRECTIONAL INSTITUTION; ) | |
| ROBERT HAL MAUNEY, WARDEN ) | |
| NORTHSIDE AND LIVESAY CORRECTIONAL ) | |
| INSTITUTION; ) | |
| PEGGY ROGERS, LIEUTENANT AT TYGER ) | |
| RIVER; ) | |
| ROGER RABB, CASEMANAGER AT ) | |
| TYGER RIVER; ) | |
| KAREN FOWLER, CASEWORKER AT ) | |
| TYGER RIVER; ) | |
| B. LEWIS, CASEWORKER AT TYGER RIVER; ) | |
| BILLY HYATT; AND ) | |
| MARY H. MCCABE, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff filed this action on July 6, 2007.[1] At the time, he was an inmate at the Tyger River Correctional Institution of the South Carolina Department of Corrections ("SCDC"). He is currently an inmate at the Evans Correctional Institution of the SCDC. Plaintiff filed an amended complaint

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC. Because these are dispositive motions, the report and recommendation is entered for review by the court.

on September 5, 2007.[2] Defendants are Greenville Technical College ("Greenville Tech"); the South Carolina Department of Probation, Parole, and Pardon Services ("SCDPPPS"); SCDPPPS Director Samuel Glover; the South Carolina Department of Corrections ("SCDC"); and SCDC employees Jon Ozmint ("Ozmint"), Tyger River Correctional Institution Warden Tim Riley, Northside and Livesay Correctional Institution Warden Robert Hal Mauney ("Mauney"), Lieutenant Peggy Rogers ("Rogers"), Case Manager Roger Rabb, Caseworker Karen Fowler ("Fowler"), Caseworker B. Lewis ("Lewis"), Billy Hyatt ("Hyatt"), and Mary H. McCabe ("McCabe"). On September 5, 2008, Defendants filed a motion for summary judgment. Plaintiff, because he is proceeding pro se, was advised on September 8, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a response on January 9, 2009. Additionally, Plaintiff has filed numerous motions, as discussed further below.

Plaintiff was convicted of forgery and sentenced on November 28, 2004 to incarceration within the SCDC for ten years. In 2006, Plaintiff participated in the Self Paced In-Class Education ("SPICE") Program. Plaintiff claims that he should have received parole in April 2007 after he completed the first phase of the SPICE Program. The SPICE Program is essentially an inmate education and employment initiative. SPICE Program participants are to complete a curriculum consisting of 35-40 hours per week of educational, spiritual, life skills, health/recreation, and vocational components. See Ben Aplin Aff.

---

[2]On July 27, 2007, the undersigned recommended that this action be dismissed. Plaintiff filed objections. On November 13, 2007, the Honorable Patrick M. Duffy, United States District Judge, interpreted Plaintiff's objections as a motion to amend the complaint, declined to adopt the report and recommendation, and instructed Plaintiff to file an amended complaint.

**MOTIONS FOR PRELIMINARY INJUNCTIVE RELIEF**

On March 24, 2008, Plaintiff filed a motion for an emergency preliminary injunction. He appears to argue that he should be granted parole and released from prison. Plaintiff argues that he is likely to be successful in this action and will suffer irreparable harm unless a preliminary injunction is granted. On August 5, 2008, Plaintiff filed a motion for an emergency protective order and temporary restraining order. He claims that Defendants are retaliating against him for filing this action by interfering with his mail and routinely searching him and subjecting him to shakedowns in search of contraband. Defendants contend that Plaintiff's motions should be denied because Plaintiff will suffer little to no irreparable harm if the preliminary injunction is denied, he is unlikely to succeed on the merits of his case, and there is a likelihood of harm to Defendants and the public if Plaintiff is granted parole.

The undersigned construes these pleadings as motions for preliminary injunctive relief. The court is required to consider and balance four factors in determining whether to grant injunctive relief prior to a trial on the merits:

> (a) plaintiff's likelihood of success in the underlying dispute between the parties;
>
> (b) whether plaintiff will suffer irreparable injury if the interim relief is denied;
>
> (c) the injury to defendant if an injunction is issued; and
>
> (d) the public interest.

Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997). The two most important factors are probable irreparable injury to a plaintiff if the relief is not granted and the likelihood of harm to a defendant if the injunction is granted. Manning, 119 F.3d at 263; North Carolina State Ports Auth. v. Dart Containerline Co., Ltd., 592 F.2d 749, 750 (4th Cir. 1979).

A plaintiff does not have an automatic right to a preliminary injunction, and such relief should be used sparingly. The primary purpose of injunctive relief is to preserve the status quo pending a resolution on the merits. Injunctive relief which changes the status quo pending trial is limited to cases where "the exigencies of the situation demand such relief." Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980).

Plaintiff's motions for injunctive relief should be denied because Plaintiff is unlikely to be successful in the underlying dispute between the parties, as discussed below. He is also unlikely to suffer irreparable injury if interim relief is denied. Plaintiff was sentenced to ten years imprisonment in 2004 and his sentence has not been completed. He has received his scheduled parole hearings. Plaintiff fails to show any injury from any alleged denial of access to the court or that any alleged retaliation is related to this action or violates his constitutional rights. He has not shown that Defendants have any control over the Parole Board to guarantee his parole. Further, Plaintiff fails to show that it is in the public interest to grant him the requested relief.

**MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR DECLARATORY JUDGMENT**

On December 18, 2008, Plaintiff filed a motion, pursuant to Federal Rule 50, for judgment as a matter of law. He claims that his motion should be granted because the Eighth Circuit found a faith-based program similar to the SPICE program unconstitutional (to the extent it used government funds to advocate Christianity as no other alternatives existed for prisoners to receive the same benefits of the program) and ordered that the program be closed and the funds returned. Plaintiff also argues that his motions should be granted based on a December 2008 South Carolina District Court ruling concerning license plates. Also on December 18, 2008, Plaintiff filed a motion for declaratory

4

judgment. He claims that the South Carolina District Court found a similar matter unconstitutional in December 2008 and that the Eighth Circuit decided "a much similar issue" in December 2007 finding that the Iowa Department of Correction's "Inner Change Program" was unconstitutional. In a third motion filed the same day, Plaintiff asks for declaratory judgment and injunctive relief. He claims that Warden Eagleton at Evans Correctional Institution is systematically "offending" the South Carolina work credit statute by incorrectly calculating earned work credits.

Defendants contend that these motions should be denied because they are not timely, as they were filed after the deadline for dispositive motions set out in the May 6, 2008 Scheduling Order. Additionally, Defendants contend that Plaintiff's motions should be denied because he voluntarily entered the SPICE program.

A Rule 50 motion is premature at this time. See Fed. R. Civ. P. 50 ("if during a trial by jury a party has been fully heard on an issue..."). To the extent that Plaintiff is claiming that his motions should be granted based on rulings concerning the Establishment Clause, his motions should be denied because he did not raise an Establishment Clause or "religious" claim concerning the SPICE program in his Complaint or Amendment Complaint.[3] Additionally, Plaintiff signed a SPICE Participant Contract in which he acknowledged that he understood that the program was voluntary. Steve Hand Aff. (Attachment to Defendants' Motion for Summary Judgment), Ex. A.

Although Plaintiff, in his rambling and voluminous Amended Complaint, appears to complain that he did not receive work credits while he was waiting for a disciplinary hearing or housed in administrative segregation, he did not make a claim concerning the way that Warden Eagleton

---

[3] Plaintiff originally claimed that Defendants violated his constitutional rights and state law because he did not receive parole after completing the first phase of the SPICE Program. In later motions and his opposition memorandum, he claims for the first time that the program is faith based and he was coerced to participate in the program in violation of the Establishment Clause.

calculates his sentence. Further, Warden Eagleton is not a party to this action. Additionally, as discussed below, a prisoner does not have a constitutional right to earn work credits.

## MOTIONS FOR SUMMARY JUDGMENT

Plaintiff alleges that his 4th, 8th, and 14th Amendment rights were violated by Defendants' actions. He claims that Defendants conspired against him[4] to deprive him of parole, obstructed his access to the court, and retaliated against him for pursuing this action. He also alleges claims under South Carolina law for breach of contract, fraud, recklessness, and intentional infliction of emotional distress (also known as outrage). Defendants contend that they are entitled to summary judgment because: (1) SCDC, SCDPPPS, and Greenville Technical College are not persons subject to suit under 42 U.S.C. § 1983; (2) Plaintiff cannot show an entitlement to parole based on his involvement in the SPICE Program; (3) Plaintiff cannot show that Defendants' alleged actions were in retaliation for filing this case; (4) Plaintiff cannot show that he has been denied access to the courts; (5) Plaintiff cannot sustain a constitutional claim against Defendants Mauney and Hyatt as a result of his disciplinary hearing procedures; (6) the individual Defendants are entitled to qualified immunity; and (7) Plaintiff cannot substantiate a claim under South Carolina law for fraud, intentional infliction of emotional distress, recklessness, or promissory estoppel.

---

[4]To establish a civil conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir.1996). A plaintiff must come forward with specific evidence that each member of the alleged conspiracy shared the same conspiratorial objective. Id. To survive a summary judgment motion, a plaintiff's evidence must reasonably lead to the inference that the defendants came to a mutual understanding to try to "accomplish a common and unlawful plan." Id. A plaintiff's allegation must amount to more than "rank speculation and conjecture," especially when the actions are capable of innocent interpretation. Hinkle at 422. The plaintiff must show that the defendants possessed an intent to commit an unlawful objective. Id. Here, Plaintiff has presented nothing other than his own speculation that there was a conspiracy.

In his opposition memorandum, Plaintiff contends that he should be granted summary judgment as to his claims under the Establishment Clause, Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the South Carolina Religious Freedom Act. Review of Plaintiff's Complaint and Amendment Complaint reveals, however, that he did not assert any Establishment Clause, RLUIPA, or South Carolina Religious Freedom Act claims. Thus, any such claims are not properly before the Court and Plaintiff's motion for cross summary judgment should be denied.

1.  **Parole Claims**

Plaintiff alleges that he should be paroled from SCDC because he completed the first phase of the SPICE program. He claims that he was led to believe that the program would guarantee his parole, but he was denied parole in part because he had not participated in a community-based program. He argues that the SPICE program is a community-based program. Defendants contend that the evidence before the Court conclusively shows that Plaintiff's voluntary enrollment in the SPICE program did not guarantee him parole and that he was cognizant of the same such that he has not stated a constitutional claim sufficient for recovery. They argue that there is no protected liberty in the expectation of early release on parole and South Carolina statutes do not create a liberty interest in parole.

The Constitution itself does not create a protected liberty interest in the expectation of early release on parole. Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979); see also Jago v. Van Curen, 454 U.S. 14, 18-20 (1981)(mutually explicit understanding that inmate would be paroled does not create liberty interest). "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz, 442 U.S. at 7. "It is therefore axiomatic that because...prisoners have no protected liberty interest in parole they cannot mount a challenge against a state parole review procedure on procedural (or

substantive) Due Process grounds." Johnson v. Rodriguez, 110 F.3d 299, 308 (5th Cir.), cert. denied, 522 U.S. 995 (1997).

Because there is no constitutional right, federal courts "recognize due process rights in an inmate only where the state has created a 'legitimate claim of entitlement' to some aspect of parole." Vann v. Angelone, 73 F.3d 519, 522 (4th Cir. 1996); see Gaston v. Taylor, 946 F.2d 340, 344 (4th Cir.1991)(en banc). South Carolina law (S.C. Code Ann. § 24-21-640)[5] has been found to create a liberty interest in parole eligibility, but does not create a liberty interest in parole. See Furtick v. South Carolina Dep't of Probation, Parole & Pardon Services, 576 S.E.2d 146, 149 (S.C.2002).

On October 9, 2006, Plaintiff executed a Participant Contract setting forth his understanding of the nature and rules of the SPICE Program. The contract specifically provides that the inmate understands that his participation in the SPICE program does not guarantee parole. Steve Hand Aff., Ex. A; Ben Aplin Aff., Ex. B. Additionally, on June 12, 2007, Greenville Tech informed Plaintiff that participation in the SPICE program did not guarantee parole because each person is evaluated on a case by case basis by the Parole Board. Hand Aff., Ex. B. On April 11, 2007, Plaintiff was sent a notice of parole rejection. The reasons for his rejection were "Nature and Seriousness Of Current Offense"[6] and "Prior Criminal Record Indicates Poor Community Adjustment." There is simply

---

[5]The statute provides, in part:
The board must carefully consider the record of the prisoner before, during and after imprisonment, and no such prisoner may be paroled until it appears to the satisfaction of the board: that the prisoner has shown a disposition to reform; that, in the future he will probably obey the law and lead a correct life; that by his conduct he has merited a lessening of the rigors of his imprisonment; that the interest of society will not be impaired thereby; and, that suitable employment has been secured for him.
S.C. Code Ann. § 24-21-640.

[6]The serious nature and circumstances of an offense is a constitutionally valid reason to deny discretionary parole. See Bloodgood v. Garraghty, 783 F.2d 470, 475 (4th Cir.1986) (holding that
(continued...)

nothing to support Plaintiff's argument that he was rejected for parole because he had not completed a community program. See Aplin Aff., Ex. A.

### 2. Access to the Courts

Plaintiff alleges that he was denied access to the courts because Defendant Rogers confiscated his legal materials on one occasion for one day and for ten days on another occasion. He claims that Defendant McCabe denied him access to the law library and refused to make copies of his pleadings on several occasions.[7] Plaintiff also claims that the mailroom staff withheld legal mail. Defendants contend that Plaintiff fails to establish his claim because he has not stated any injury which was caused by the alleged actions.

In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court determined that prisoners have an absolute right to access to the courts, both to allow them to attack their convictions and to file other lawsuits. The decision merely requires that the right of access to the courts not be impeded. The right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343 (1996). In order to make out a prima facie

---

[6](...continued)
the parole board gave constitutionally sufficient reasons when it informed the prisoner that he was denied parole release because of "the seriousness of [his] crime" and his "pattern of criminal conduct").

[7]Plaintiff also claims that McCabe expressed a racial-animus toward him by filing bogus disciplinary charges against him. McCabe states that, contrary to Plaintiff's allegations, she cannot charge Plaintiff with a disciplinary infraction, but can report problems to a correctional officer. On March 15, 2007, McCabe noticed that Plaintiff was in the library when he was assigned to be in the cafeteria, but no disciplinary action was taken. McCabe Aff., Exs. A and B. Although racial discrimination claims are actionable, Henry v. Van Cleve, 469 F.2d 687 (5th Cir. 1972), merely conclusory allegations of discrimination are insufficient to state a claim. See Chapman v. Reynolds, 378 F. Supp. 1137 (W.D. Va. 1974)("[A]bsent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated.").

case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996); see also White v. White, 886 F.2d 721, 723-24 (4th Cir. 1989); Strickler v. Waters, 989 F.2d 1375, 1382-85 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993). A plaintiff must demonstrate, for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim. Lewis, 518 U.S. at 353-54.

Here, Plaintiff fails to show that he suffered any actual injury as a result of Defendants' actions such as the late filing of a court document or the dismissal of an otherwise meritorious claim. Defendants provide that inmates have numerous time slots available for library usage and that an inmate merely needs to sign up for a slot. McCabe states that if an inmate has a court deadline, he is allowed additional library time. She also states that because of cost, time, and storage space, SCDC instituted a photocopying policy restricting the types of materials that can be copied such that SCDC will not photocopy handwritten materials from an inmate. McCabe Aff. Rogers states that if an inmate has non-legal items in his legal storage box, those items may be confiscated. She states that non-legal items, such as typewriter ribbons, have been discovered in Plaintiff's legal box and confiscated. On one occasion, Rogers confiscated Plaintiff's legal materials because he left them unattended, but they were returned to him with specific instructions to monitor them. Rogers Aff.

Plaintiff has filed numerous voluminous pleadings in this action with photocopies of documents attached. Further, he has not alleged that Defendants will not allow him to handwrite copies of documents or pay for copies. Charges for copying services, particularly in the light of available alternatives, do not constitute denial of access to the courts. See, e.g., Lyons v. Clark, 694 F. Supp. 184, 188 (E.D.Va. 1988)(inmates do not have unlimited rights to photocopies), aff'd, (4th

10

Cir. 1989)[Table]; Johnson v. Moore, 948 F.2d 517, 521 (9th Cir. 1981)(denial of free photocopying does not amount to a denial of access to the courts); Harrell v. Keohane, 621 F.2d 1059, 1061 (10th Cir. 1980); Dugar v. Coughlin, 613 F. Supp. 849, 853 (S.D.N.Y 1985).

### 3.     Retaliation

Plaintiff alleges that Defendants have retaliated against him for filing this action by subjecting him to frequent "shakedowns" and improperly subjecting him to disciplinary detention. Defendants contend that Plaintiff fails to show any evidence of retaliation.

Defendants provide that after Plaintiff filed his complaint he was charged on two occasions with possession of contraband. On August 20, 2007, Plaintiff was charged with possession of contraband because he had in his possession a radio that could not be attributed to him. He was convicted of this infraction on September 5, 2007, and placed in disciplinary detention for sixty days. On September 1, 2007, Plaintiff was found in possession of a book that he could not recall how he acquired and in possession of another inmate's radio. He was convicted on September 24, 2007, and placed in disciplinary detention for forty-five days. Defendants provide that the charging officers were Ridings and Clevengers, who are not parties to this action. Defendants' Motion for Summary Judgment at 10-11. Plaintiff claims that SCDC lodged a detainer against him in retaliation for filing this action, but fails to show that any of Defendants placed this detainer. Defendant Lewis, a caseworker at SCDC, states that Plaintiff requested that she write to the Spartanburg County Sheriff's Office regarding a detainer. She informed Plaintiff that he would have to contact the agency himself to resolve the matter. Lewis Aff., Para. 5. Further, Plaintiff appears to admit that this detainer was removed in August 2007. See Amended Complaint at 15.

Bare assertions of retaliation do not establish a claim of constitutional dimensions. See Adams v. Rice, 40 F.3d 72 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995). In order to state a

11

claim for retaliation, an inmate must show that the alleged retaliation had an adverse impact on the exercise of his constitutional rights. Id. at 75. "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition "retaliatory" in the sense that it responds to prisoner misconduct.'" Cochran v. Morris, 73 F.3d 1310 (4th Cir. 1996)(en banc), citing, Adams, 40 F.3d at 74. Here, Plaintiff fails to show that any alleged retaliation had an adverse impact on the exercise of his constitutional rights.

### 4. Disciplinary Hearing

Plaintiff claims that Defendants Mauney and Hyatt violated his constitutional rights when they requested and received a rehearing in a disciplinary matter involving Plaintiff that had earlier been dismissed because his accuser was not present. Plaintiff also appears to make vague accusations concerning other disciplinary hearings. Defendants contend that Plaintiff fails to show that his constitutional rights were violated.

Defendants provide that on February 18, 2006, Officer Hyatt conducted a strip search of Plaintiff after visitation and found twenty-five dollars in Plaintiff's pants. Plaintiff was charged with contraband and a hearing was held on March 9, 2006. Officer Hyatt was contacted via speakerphone because Plaintiff had been transferred to Tyger River. The phone was disconnected during the hearing and Hyatt was unable to give his testimony. Plaintiff's case was dismissed because there was no accuser present. Warden Mauney filed a request for rehearing in the matter, which was granted. A rehearing was held on March 28, 2006, with all parties present. Plaintiff was found guilty of possession of contraband and lost sixty days good time as well ast 180 days of canteen, telephone, and visitation privileges. Mauney Aff., Ex. A.

12

To the extent that Plaintiff's allegations concern his disciplinary proceedings and the outcome of those proceedings, his claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994)[8] and Edwards v. Balisok, 520 U.S. 641 (1997)(Heck precludes a § 1983 claim in a prison disciplinary hearing which has not been previously invalidated, where the challenge would necessarily imply the invalidity of the deprivation of good-time credits); see also Kerr v. Orellana, 969 F. Supp. 357 (E.D.Va. 1997)(holding that prisoner's § 1983 claim for monetary damages and injunctive relief related to his disciplinary hearing was precluded under Heck). Plaintiff has not shown he successfully attacked any disciplinary hearing conviction. Plaintiff cannot maintain a § 1983 action, whether for restoration of good time credits, monetary damages, or injunctive relief related to the hearing, if a judgment in his favor would necessarily imply the invalidity of the outcome of the disciplinary proceeding. Here, to the extent that the awarding of damages to Plaintiff would necessarily imply the invalidity of the outcome of his disciplinary hearing(s), his claim is barred under Heck and Balisok.

Further, to the extent that Plaintiff is challenging the number of work credits he has earned, his claim also fails. Although a prisoner may have due process rights as to good-time credits which are taken away from him, the opportunity to earn good-time or work credits is not a constitutionally established liberty interest. Wolff v. McDonnell, 418 U.S. 539, 557 (1974); see Sandin v. Conner, 515 U.S. 472 (1995). To the extent that Plaintiff is implicating the duration of his confinement by requesting that his good-time, merit, or work credits be restored, he is subject to the exhaustion requirement of 28 U.S.C. § 2254(b). Preiser v. Rodriguez, 411 U.S. 475 (1973). Plaintiff has not

---

[8]The Supreme Court, in Heck v. Humphrey, 512 U.S. 477 (1994) determined that where a prisoner files an action under § 1983 which would necessarily implicate the validity of his conviction, he may not pursue the damages claim unless and until he successfully attacks the conviction on which his suit is based.

presented his claims pursuant to 28 U.S.C. § 2254 and he has not shown that he has satisfied this exhaustion requirement.

### 5. "Persons" Subject to Suit under § 1983

Defendants SCDC, SCDPPPS, and Greenville Tech contend that they are entitled to dismissal as they are not "persons" subject to suit under § 1983. Buildings, walls, and fences do not act under color of state law. See Allison v. California Adult Authority, 419 F.2d 822, 823 (9th Cir. 1969)(California Adult Authority and San Quentin Prison not "person[s]" subject to suit under § 1983). Buildings and correctional institutions, like sheriff's departments and police departments, are not usually considered legal entities subject to suit. See, e.g., Martinez v. Winner, 771 F.2d 424, 444 (10th Cir. 1985)(Denver Police Department not a separate suable entity), vacating and remanding for consideration of mootness, 475 U.S. 1138 (1986); Post v. City of Fort Lauderdale, 750 F. Supp. 1131 (S.D.Fla. 1990); Shelby v. City of Atlanta, 578 F. Supp. 1368, 1370 (N.D.Ga. 1984); Brooks v. Pembroke City Jail, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989)(§ 1983 claims are directed at "persons" and a jail is clearly not a person amenable to suit); see also Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1139 n. 6 (4th Cir. 1990)(noting that a State university was not a person under § 1983). Hence, the SCDC, the SCDPPPS, and Greenville Tech are not "persons" subject to suit under § 1983.

### 6. Qualified Immunity

The individual defendants contend that they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

14

Harlow, 457 U.S. at 818.

> The Court of Appeals for the Fourth Circuit has stated:
>
> > Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that the individual defendants violated any of his clearly established constitutional or statutory rights. Therefore, the individual defendants are entitled to qualified immunity in their individual capacities.

### 7.     State Law Claims

Plaintiff also alleges claims under South Carolina law. Defendants contend that their motions for summary judgment should be granted as to Plaintiff's state law claims as he cannot substantiate a claim under South Carolina law for fraud, intentional infliction of emotional distress, recklessness, or promissory estoppel. As Plaintiff fails to show that Defendant violated his rights under § 1983 (as discussed above), it is recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any state law claims be dismissed.

### CONCLUSION

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 71) be **granted**. It is further recommended that Plaintiff's motion to dismiss

Defendant Fowler (Doc. 54) as a defendant to this action be **granted**;[9] Plaintiff's motion for summary judgment (Doc. 105) be **denied**; Plaintiff's motion for judgment as a matter of law (Doc. 89) be **denied**; Plaintiff's motion for declaratory judgment (Doc. 90) be **denied**; Plaintiff's motion for declaratory judgment and injunctive relief (Doc. 91) be **denied**; and Plaintiff's motions for protective order, temporary restraining order, and preliminary injunctions (Docs. 36 and 69) be **denied**.

Joseph R. McCrorey
United States Magistrate Judge

February 9, 2009
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

---

[9] On June 4, 2008, Plaintiff filed a motion to dismiss Defendant Fowler as a party to this action because she is not a correct party to the action. Defendants did not file a response.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).